IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RAYMOND THOMAS PARHAM

    Petitioner,

vs.

KATHY MENDOZA-POWERS

    Respondent.
_____/

No.  CIV-S-06-2624 GEB GGH P

FINDINGS AND RECOMMENDATIONS

*Introduction and Summary*

    Petitioner has filed a habeas corpus petition seeking to vacate his conviction in state court for a violation of Cal. Penal Code § 220(a).  Although petitioner believes that he was convicted of assault with intent to commit mayhem, <u>see</u> Petition, page 1, he was actually convicted of assault with intent to commit rape.  See <u>People v. Parham</u>, 2005 WL 2249890 (Cal. App. 2005).[1]  He was sentenced to six years in prison, the upper term, with an extra year for a

---

[1] Cal. Penal Code § 220(a) reads: (a) Except as provided in subdivision (b), any person who assaults another with intent to commit mayhem, rape, sodomy, oral copulation, or any violation of Section 264.1, 288, or 289 shall be punished by imprisonment in the state prison for two, four, or six years.  There have been some inconsequential (to this case) wording changes to this specific provision enacted in 2006.

1

prior conviction. Petitioner seeks to have his conviction vacated on account of:

(1) failure of the court to sua sponte instruct on a lesser offense;

(2) insufficient evidence;

(3) a Cunningham violation, i.e., sentence given for the upper term without the jury having found aggravating circumstances.

Petitioner's first two claims are without merit. A Cunningham violation occurred; however, it was ultimately harmless. The petition should be denied.

*Facts*

The facts set forth by the California Court of Appeal are found to be accurate by the undersigned. Therefore, the undersigned sets forth herein the facts as given by that court.

> In July 2004, the victim Patricia C., was visiting Chico from Salt Lake City. On July 18, 2004, at approximately 8:30 p.m., she was on her way out of town when she met Tommy Tigert at a gas station. Tigert invited her to his house for some food and beer. Tigert was living with defendant at the time. Patricia accepted, and the two went to Tigert's home, where she met defendant, ate some dinner, and drank a few a beers. After a couple of hours, Tigert went to bed, and defendant and Patricia continued talking.
>
> They talked about massage, and defendant asked her if she "[w]ould [ ] ever do ... massages for money," and she said, "Yeah, as long as it's not sexual."Defendant asked her to give him a massage, and she agreed. Defendant wanted her to change into shorts before she massaged him so that there would be "skin-to-skin" contact, but she declined. Defendant repeatedly asked Patricia if she wanted to take a bath, and she said no.
>
> When Patricia was ready to leave, defendant told her he could get her a construction job making $100 a day, so she "decided to stick around and see if that would work out."Defendant invited her to sleep in his bed and "said he wouldn't do anything." She agreed and went to bed fully clothed around midnight. Defendant slept next to her in his underwear. Defendant attempted to "cuddle" with her several times during the night, but she moved away.
>
> At about 7:30 a.m. the following morning, defendant woke up Patricia and said he wanted her to "finish that massage." She told him she was too tired and went back to sleep. Shortly thereafter, she was awakened when defendant put his arm around her and touched her bare stomach. She said, "I thought you weren't going to try anything" and told him not to touch her. She then went back to sleep.

> Patricia was awakened a third time when defendant sat on top of her, straddling her, as she lay on her back. He pushed her face to the side with one hand and held her arm down with the other. As he sat on top of her, he said something like: "We can do this the easy way or the hard way."Patricia understood this statement to mean defendant wanted to have sex with her and proceeded to "fight back." She eventually got off the bed, but defendant threw her back onto it. She twice grabbed defendant's testicles in an attempt to get away. After she grabbed him the second time, he struck her twice in the face. She eventually broke free, ran outside, and asked some people for help.
>
> Following the assault, Patricia's face was covered in blood, her nose was broken, and she had "a big black eye."
>
> That evening, defendant told Tigert the police wanted to talk to Tigert about "an assault on that girl that stayed there that night."Defendant asked Tigert to tell the police defendant "wasn't there; that he had stayed somewhere else." Tigert asked defendant if he did it, and defendant said, "yeah." Tigert told police defendant had been home the entire night.
>
> Defendant took the stand in his own defense. He denied making any sexual overtures to Patricia, asking her to give him a massage, "trying to rape her or have sex with her," or telling her, "We can do it the easy way or the hard way."He claimed Patricia asked him if he wanted a massage and that she "flipped out" and began flailing her arms at him when he attempted to wake her in the morning. When he attempted to grab her wrist, she grabbed his scrotum, and when he attempted to remove her hand, he accidentally hit her nose with his elbow.
>
> Defendant admitted he lied to police when he initially denied being at the house the previous evening, knowing Patricia, or hitting her. He also admitted asking Tigert to lie for him and having prior felony convictions for theft from an elder, identity theft, and giving false information to a police officer.

People v. Parham, supra, at *1-2

*Legal Standards*

The AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential standards of review to be used by a federal habeas court in assessing a state court's adjudication of a criminal defendant's claims of constitutional error. Moore v. Calderon, 108 F.3d 261, 263 (9th Cir. 1997).

In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme Court defined the operative review standard set forth in § 2254(d).  Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the court.  There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an

3

"unreasonable application of" that law. Id. at 1519. "Contrary to" clearly established law applies to two situations: (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law, or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000). It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions. While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at 1522 (emphasis in original). The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early v. Packer, 537 U.S. 3, 123 S. Ct. 362 (2002). Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority. Id. An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred. Lockyer v. Andrade, 538 U.S. 63, 75-76 , 123 S. Ct. 1166, 1175 (2003). Moreover, the established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. at 10, 123 S. Ct. at 366.

However, where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

*Discussion*

    A. No Sua Sponte Instruction Given By the Trial Court on a Lesser Included Offense

To the extent that petitioner rests his claim on a duty to give an instruction sua sponte under rules of state law, petitioner has stated no federal claim. Indeed, in the failure to give a lesser included offense instruction context, the Ninth Circuit has flatly held in non-capital cases that the failure to give the instruction states no federal claim whatsoever. James v. Reece, 546 F.2d 325, 327 (9th Cir. 1976); see also Windham v. Merkle, 163 F.3d 1092, 1106 (9th Cir. 1998). The one pre-AEDPA exception to this rule in non-capital cases occurs when the theory of the defense incorporated the lesser included offense, yet no instruction was given on the lesser offense. Bashor v. Risely, 730 F.2d 1228, 1240 (9th Cir. 1984).

Petitioner contended at trial that his elbow accidently hit the victim in the face as she was flailing about for some unknown reason. An accidental contact could not be an assault or battery. Because a simple assault was not the theory of the defense, no federal claim is possible on account of instructing on the hypothetical simple assault .[2]

    B. Sufficiency of the Evidence

When a challenge is brought alleging insufficient evidence, federal habeas corpus relief is available if it is found that upon the record evidence adduced at trial, viewed in the light most favorable to the prosecution, no rational trier of fact could have found "the essential

---

[2] Nor, as pointed out by the California Court of Appeal, was such an instruction warranted under state law.

elements of the crime" proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Under Jackson, the court reviews the entire record when the sufficiency of the evidence is challenged on habeas. Adamson v. Ricketts, 758 F.2d 441, 448 n. 11 (9th Cir. 1985), vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987). It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts." Jackson, 443 U.S. at 319, 99 S. Ct. at 2789. "The question is not whether we are personally convinced beyond a reasonable doubt. It is whether rational jurors could have reached the same conclusion that these jurors reached." Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991).

> If the trier of fact could draw conflicting inferences from the evidence, the court in its review will assign the inference that favors conviction. McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir. 1994). The fact that petitioner can construct from the evidence alternative scenarios at odds with the verdict does not mean that the evidence was insufficient, i.e., that no reasonable trier of fact could have found the conviction scenario beyond a reasonable doubt.In reviewing the sufficiency of the evidence supporting a conviction, we search the record to determine "whether a reasonable jury, after viewing the evidence in the light most favorable to the government, could have found the defendants guilty beyond a reasonable doubt of each essential element of the crime charged." United States v. Douglass, 780 F.2d 1472, 1476 (9th Cir.1986). *The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether the jury could reasonably arrive at its verdict.* United States v. Fleishman, 684 F.2d 1329, 1340 (9th Cir.), cert. denied, 459 U.S. 1044, 103 S. Ct. 464, 74 L. Ed.2d 614 (1982); United States v. Federico, 658 F.2d 1337, 1343 (9th Cir.1981), overruled on other grounds, United States v. De Bright, 730 F.2d 1255, 1259 (9th Cir.1984) (en banc).

United States v. Mares, 940 F.2d 455, 458 (9th Cir. 1991)(emphasis added).

Superimposed on these already stringent insufficiency standards is the AEDPA requirement that even if a federal court were to initially find on its own that no reasonable jury should have arrived at its conclusion, the federal court must also determine that the state appellate court not have affirmed the verdict under the Jackson standard in the absence of an unreasonable determination. Juan H. v. Allen, 408 F.3d 1262 (9th Cir. 2005).

Given the evidence set forth by the Court of Appeal, which the undersigned will

not repeat, the sufficiency of the evidence is patently clear.[3]  Moreover, petitioner must know that sufficiency of the evidence includes the credibility inferences which the jury likely drew.  In this case, those adverse inferences stem from the glaring, inconsistent story related by the petitioner to the police as opposed to the new story at trial, as well as his obstruction of justice with respect to Tigert.  Petitioner's "accidental hit" defense was hopeless.

Petitioner also contends that the evidence was insufficient because the victim would at times claim that she could not remember certain details.  See, e.g., RT 91 (she could remember that petitioner was on top of her, but could not remember whether he was on his knees.)  The credibility of the victim and whether she could remember sufficiently was a matter for the jury to decide.   There is no doubt that she remembered the basic facts of the crime.  Finally, petitioner attempts to claim insufficient evidence because he believes that the victim was not as morally pure as the prosecution made her out to be.  This attack is meritless.

### C. The Cunningham Issue

Petitioner moves to vacate his sentence on the ground that imposition of the upper term violates his Sixth Amendment right to have facts increasing his sentence proved to a jury beyond a reasonable doubt, citing Apprendi v. New Jersey, 530 U.S. 466, 488-90 (2000); Blakely v. Washington, 542 U.S. 296, 303-04, 124 S. Ct. 2531 (2004); Cunningham v. California, 549 U.S. 270, 127 S. Ct. 856.  See Traverse.  In Cunningham, supra,127 S. Ct. at 860, decided on January 22, 2007, the High Court held that California's determinate sentencing law (DSL) violates a defendant's jury trial right under the Sixth and Fourteenth Amendments "by placing sentence-elevating factfinding within the judge's province" insofar as California law permitted a judge to find aggravating factors for imposition of the upper term of punishment.  However, to the extent that a judge imposed an upper term on the basis of previous criminal convictions, the Almendarez-Torres exception, no Cunningham error would occur.  See discussion below.

---

[3] In addition, because a sufficiency of the evidence claim requires a review of the record, the undersigned has performed that task.

7

The sentencing judge in petitioner's case found as follows:

> It is the Court's intention to impose the upper term for the base term of the crime of Penal Code 220. I find that to be the appropriate base term because circumstances in aggravation outweigh those in mitigation as indicated by the following circumstances which the court finds have been proven beyond a preponderance of the evidence.
> 
> Now there are circumstances in aggravation that are listed in Rule of Court 4.421. The Blakely case has made inroads on some of those but I do not know what the California Supreme Court or any other higher court is going to do with Blakely.
> 
> So I will continue to make findings as to non-Blakely circumstances, and if available Blakely circumstances. The non-Blakely circumstance is that the victim took advantage of a position of trust.[4] This wasn't– it was a stranger but she was a guest in his house. He had assured her everything would be all right and then the crime occurred.
> 
> As to potential Blakely factors, his crimes are numerous or increasing seriousness.[5]. He was on parole when the crime was committed. His prior performance on probation was not satisfactory. One of the circumstances in aggravation I could find is that he suffered a prior prison term. I did not find that because I think that's what Mr. Radcliffe is arguing because if he has an enhancement for a prior prison term, I can't find a prior prison term to be a circumstance in aggravation. I'm not because I'm precluded from doing so....
> 
> Accordingly, the defendant is sentenced to the department of corrections for the upper term of six years plus a one year additional term for the prior prison term for a total unstayed aggregate of seven years.

RT 370-371.

Recently, in Butler v. Curry, 528 F.3d 624 (9th Cir.2008), the Ninth Circuit clarified that the Cunningham decision, striking down California's determinate sentencing law (DSL), insofar as the upper term aggravating factors were not submitted to a jury, was compelled by Blakely. Thus, it could be retroactively applied even to cases on collateral review. Citing Teague v. Lane, 489 U.S. 288, 306, 109 S. Ct. 1060, the Ninth Circuit held:

> *Apprendi*, *Blakely*, and *Booker* made "courts throughout the land" aware that sentencing schemes that raise the maximum possible term based on facts not found by a jury violate the constitutional rights of defendants. *Id*. at 306. No principles of comity or federalism would be served by refusing to apply this rule to functionally indistinguishable state sentencing schemes on collateral

---

[4] Actually, this would be a classic circumstance to which Blakely would apply. The trial judge had this backwards.

[5] Factors regarding past criminal convictions, not evident on the face of the conviction records, are factors to which Blakely may not apply. See discussion of the Ninth Circuit Butler case in the text.

> review. *Cunningham* thus did not announce a new rule of constitutional law and may be applied retroactively on collateral review.

Butler, supra, at 639.[6]

Therefore, the decision as to whether petitioner's constitutional rights herein were violated rests, as a threshold matter, on whether or not his conviction became final before Blakely was decided.[7] Because in petitioner's situation, Blakely was decided before petitioner's conviction became final, and indeed Blakely was clearly at issue in his state proceedings, the Cunningham holding would be retroactively applicable to his case.

---

[6]Looking at the pre-Cunningham cases which led to the conclusion that the California DSL "squarely violated" the Sixth Amendment, the Ninth Circuit summarized:

> First in the line of pertinent cases was Apprendi v. New Jersey, 530 U.S. 466 (2000), which held that " 'any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.' " *Id*. at 476 (quoting Jones v. United States, 526 U.S. 227, 243 n.6 (1999)). Next, Blakely v. Washington, 542 U.S. 296 (2004), clarified that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant" and reaffirmed Apprendi's "bright-line rule." Id. at 303 (emphasis in original). Finally, United States v. Booker, 543 U.S. 220 (2005), held that the Federal Sentencing Guidelines were invalid because, as in Blakely, " 'the jury's verdict alone does not authorize the sentence. The judge acquires that authority only upon finding some additional fact.' " *Id*. at 235 (quoting Blakely, 542 U.S. at 305). Taken together, Apprendi, Blakely, and Booker, firmly established that a sentencing scheme in which the maximum possible sentence is set based on facts found by a judge is not consistent with the Sixth Amendment.

Butler, supra, at 635.

[7]Blakely is the case on which petitioner's case depends because Blakely is *not* retroactively applied. Schardt v. Payne, 414 F.3d 1025, 1038 (9th Cir. 2005). That is, Cunningham cannot be applied retroactively for cases which were final prior to Blakely.

9

Respondent initially argues that because the law "changed" with Cunningham, petitioner should be compelled to re-exhaust the issue and allow the state courts a chance to apply Cunningham, i.e., his claim is not exhausted. The argument has no merit because Butler expressly held that Cunningham did *not* change the federal Constitutional law pertinent to petitioner's case– that law had been decided at the latest by Blakely and simply applied to California sentencing.[8] Because Blakely had been raised in the state proceedings, and especially before the state supreme court, see Petition for Review, the essential Cunningham claim has been fully exhausted.[9]

Next, respondent contends that the trial judge relied, in part on recidivist factors, and that such factors have been excepted from the entire line of Apprendi cases, including Blakely and Cunningham. However, as the Ninth Circuit held in Butler, the prior conviction exception to what must be placed before the jury is a very limited exception, and does not include all aspects and sequellae of the the prior conviction.

> We are left, then, with the task of determining the outer bounds of the "prior conviction" exception after Apprendi. We find some guidance in Shepard, which addressed the kind of evidence on which a court may rely in determining whether a prior conviction constitutes a crime of violence for purposes of the Armed Career Criminal Act of 1984 ("ACCA"). 544 U.S. at 15-16, 125 S.Ct. 1254. Shepard noted Almendarez-Torres' exception for prior convictions, but also recognized that a district court's findings of fact about the basis for a prior guilty plea or conviction at some point "raise[ ] the concern underlying ... Apprendi," that is that the Constitution "guarantee[s] a jury's finding of any disputed fact essential to increase the ceiling of a potential sentence." Id. at 25, 125 S.Ct. 1254.
> Without delineating precisely the line between those facts that come within the Almendarez-Torres exception and those that do not, Shepard "avoid[ed] serious risks of unconstitutionality" by "limit[ing] the scope of judicial factfinding" under the ACCA to whether a prior guilty plea or jury verdict necessarily constitutes a conviction for the "generic" crime at issue. Id. at 25-26, 125 S.Ct. 1254. Specifically, where the conviction is by guilty plea, a judge may consider only "the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." Id. at 16, 125 S.Ct. 1254; see also Taylor v. United States, 495 U.S. 575, 602, 610, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) (indicating

---

[8] Of course, Butler was decided after respondent briefed the matter. No criticism of respondent's counsel is intended.

[9] Moreover, respondent stated in the answer that all claims had been exhausted (p.2), but then argued in the points and authorities that the Cunningham claim had not been exhausted. Which is it?

> the documents which may permissibly be considered in a case where conviction is by jury verdict). Shepard thus strongly suggests that the Almendarez-Torres exception does not extend to any and all facts related to a prior conviction. Rather, to avoid a potential conflict with the Sixth Amendment, Shepard limited the consideration of prior convictions at judicial sentencing to those facts that can be established by the "prior judicial record" of conviction.
>
> Heeding the Supreme Court's cautions about Almendarez-Torres and Shepard's guidance, we have been hesitant to broaden the scope of the prior conviction exception to facts not apparent on the face of conviction documents. United States v. Kortgaard, 425 F.3d 602, 610 (9th Cir.2005) (concluding that we must treat Almendarez-Torres as a "narrow exception to the general rule"). Under our precedents, the exception does not extend to qualitative evaluations of the nature or seriousness of past crimes, because such determinations cannot be made solely by looking to the documents of conviction. See id. at 607 (holding that "seriousness" of past crimes and "likelihood of recidivism" are not facts that come within the "prior conviction" exception); Stokes v. Schriro, 465 F.3d 397, 404 (9th Cir.2006) (holding that the determination whether the present offense is "strikingly similar" to a past offense does not come within the "prior conviction" exception).

Butler, 528 F.3d at 644.

Butler invalidated the use of "probation status" in its case as an exception based on the "prior conviction" exception to the Apprendi/Cunningham rule. In petitioner's case, the judge first relied on the number and seriousness of petitioner's prior convictions. This is a common sense application of the fact of prior convictions and would satisfy the exception. However, the judge also relied on the precise factors invalidated by Butler-- petitioner's parole status at the time of the offense and the "fact" that petitioner had not performed well on prior probations. The trial judge went even further in assessing factors prohibited by Butler by assessing as well, when determining to impose the upper term, the "fact" that petitioner abused a position of trust, i.e., the victim had been invited into his residence. The court has found no authority for the proposition that the commission of a crime by a resident in a home owned by another is sufficient as an abuse of trust *per se* such that an upper term enhancement would be automatically applied. See generally Medley v. Runnels, 506 F.3d 857, 862-864 (9th Cir. 2007) (en banc). The matter of an "abuse of trust" was a factual matter to be decided by the jury, and in light of Butler, Apprendi/Cunningham/Blakely error occurred.

1    Thus, unless the error is harmless, petitioner is entitled to resentencing.

2    Butler is entitled to relief only if the sentencing error in his case is not harmless. See Washington v. Recuenco, 548 U.S. 212, 126 S.Ct. 2546, 2552, 165 L.Ed.2d 466 (2006) (holding that sentencing errors are subject to harmless error analysis). Applying Brecht v. Abrahamson, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), we must determine whether "the error had a substantial and injurious effect on [Butler's] sentence." Hoffman v. Arave, 236 F.3d 523, 540 (9th Cir.2001) (internal quotation marks omitted). Under that standard, we must grant relief if we are in "grave doubt" as to whether a jury would have found the relevant aggravating factors beyond a reasonable doubt. O'Neal v. McAninch, 513 U.S. 432, 436, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995). Grave doubt exists when, "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." Id. at 435., 115 S.Ct. 992.

Butler, 528 F.3d at 649.

As respondent observes, the presence of one aggravating factor is sufficient for an upper term to be imposed. People v. Osband, 13 Cal. 4th 622, 728, 55 Cal. Rptr. 2nd 26 (1996). The trial judge at petitioner's sentencing imposed the upper term, in part, because of the numerosity of past crimes and increasing seriousness of his crimes. This factor alone can warrant the upper term, People v. Towne, 44 Cal. 4th 63, 83, 78 Cal. Rptr 3d 530 (2008); People v. Black, 41 Cal. 4th 799, 818, 62 Cal. Rptr. 3D 569 (2007), and is a factor apparent from the records of the convictions themselves. See CT 181-182. Petitioner in no way disputes the findings of the trial judge in this regard. Thus, any Cunningham error in other aspects of the sentence was harmless.

*Conclusion*

This petition for habeas corpus should be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District

Case 2:06-cv-02624-GEB-GGH   Document 16   Filed 10/15/08   Page 13 of 13

1  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

2

3  DATED: <u>October 15, 2008</u>

4

5                                              <u>/s/ Gregory G. Hollows</u>
                                                GREGORY G. HOLLOWS
6                                               UNITED STATES MAGISTRATE JUDGE

13